UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, et al., <br>         Plaintiff, <br>   v. <br><br> TAREK MOUSSA, <br>         Defendant, <br>   v. <br><br> JOHN PANZER, <br>     Third Party Defendant and <br>     Third Party Counter- <br>     Defendant | Civ. Action No. 07-2332 (KSH) <br><br><br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

      This lawsuit involves a serious fact issue: did Dunkin' Donuts franchisee Tarek Moussa ("Moussa") offer a bribe to a Dunkin' Donuts employee, John Panzer ("Panzer"), on April 25, 2007?

      The Court assumes familiarity on the parties' part regarding the dealings between them up until April 25, 2007. The record establishes that in late 2006, Panzer was assigned as Dunkin's Development Manager for the territory in which Moussa held rights under a Multiple Unit Store Development Agreement ("MSDA") that he had entered into in 2004. (Panzer Dep. 28:11-29:10; 32:8-10, 23-25.) Under the MSDA, Moussa had paid $150,000 to Dunkin' for development rights over three locations in Newark and Elizabeth ($50,000 each). After Dunkin' rejected a store location proposed by Moussa for Spring Street in Elizabeth (Perisco Dep. 88:15-

22), in late 2006 Dunkin' agreed to amend the MSDA with Moussa to expand the areas in which he could develop Dunkin' locations. (Moussa Dep. 129:14-19.) During the process of amending the MSDA, the record shows that Dunkin' provided Moussa at least two "incorrect" proposed amendments to the MSDA. (Moussa Dep. 132:1-11.)

Panzer was responsible for working with Moussa to explore the possibility of opening additional Dunkin' locations. Moussa and Panzer worked together on development of locations in the Newark-Elizabeth territory throughout early 2007, meeting approximately five times for business purposes. (Moussa Dep. 181:20-182:5.)

Leading up to the April 25th event, it appears that Panzer and Moussa had a lunch meeting on April 4, 2007. At his deposition, Panzer testified that Moussa "said he wanted to give me a gift for Easter," and that he responded, "there is no need to give me any gift for Easter." (J. Panzer Dep. 122:18-21.) Moussa, on the other hand, testified that he never told Panzer he was going to give him a gift, and never even met with him on April 4, 2007. (Moussa Dep. 181:17-182:2.)

On April 25, 2007, Moussa, Panzer, and a real estate broker met to visit a possible Dunkin' development site. According to Panzer, he and Moussa were planning to follow the broker to another site together in Moussa's car. (J. Panzer Dep. 141:9-145:24.)

> A. We went out to the parking lot. I went in Tarek's car. I got in his car and I sat down.
> Within an instant of me getting to the car, he reached down, pulled out an envelope and handed it to me.
> I looked at it, saw that it was money. I gave it back to him, and he said, [sic] ["]I can't take this." [sic]
> He said, "You have to take it. This is my friend. This is how I take care of my friends."
> I said, "I can't take it and I'm not taking it."

(J. Panzer Dep., 141:9-21.) Panzer testified that he briefly held the unsealed envelope, saw that it contained cash in bills that he ascertained were not in $1 or $5 denominations, and that he promptly passed the envelope back to Moussa, stating that he did not want it. (Pls.' Opp'n Defs.' Mot. Summ. J. 3 (citing Panzer Dep., 146:10-11).) Panzer testified that he subsequently followed through with the visit with Moussa and the broker (J. Panzer Dep. 150:1-152:25). But afterwards, he reported the incident to his superiors at Dunkin' (Moussa Dep. 153:13-22), shared the narrative of the alleged bribery with his wife (K. Panzer Dep 18:21-20:21), and shortly thereafter was directed to prepare an e-mail describing the incident for review by management. (E-mail of J. Panzer to M. Ryan, Apr. 26, 2007.)

For his part, *Moussa denies that any incident involving an envelope with cash for Panzer ever occurred*, testifying as follows:

> Q. On that day, April 25th, did you provide any cash to Mr. Panzer?
> A. No.
> Q. Did you tell him you were giving him a gift ay any point in time?
> A. No.
> Q. Did you tell him that you considered him to be a friend at any point in time?
> A. No.
> Q. Did you have an envelope filled with cash with you at that time?
> A. No.

(Moussa Dep. 182:6-17.)

It is undisputed is that on May 9, 2007, Dunkin' employees William Gallo and Mike Ryan personally told Moussa that Dunkin' was planning to terminate his franchise unless he voluntarily left the Dunkin' system. (Gallo Dep. 22:10-25:8.) Moussa refused, resulting in letters dated May 11, 2007, May 15, 2007, and July 19, 2007 terminating the franchise agreements and MSDA.

The foregoing establishes that a factfinder must determine which version of the April 4th and April 25th events is true, Moussa's or Panzer's. Notwithstanding, both parties have filed summary judgment motions, deftly sidestepping this problem as follows. Moussa tells the Court, "we do not ask the Court to accept Mr. Moussa's version of the facts, but, for purposes of the motion, to accept the evidence relied upon by Dunkin' . . . . [evidence which] on its face supports only one permissible inference – that Moussa offered him a gift and did not, in fact, make an offer 'as consideration for' an agreement on Panzer's part to violate a duty of fidelity to Dunkin'." (Defs.' Opp'n Br. 17.)

For its part, Dunkin' announces: "This is a simple case with one basic question for the court to determine – whether in April 2007, Defendant Moussa offered an envelope full of cash to John Panzer in an attempt to bribe him to ensure Panzer's assistance and support in Moussa's development of new Dunkin' stores." And on the same page, oddly, Dunkin' admits, "Certain issues relating to the bribe are factual questions to be determined at trial. Defendant Moussa's Counterclaims, however, can and should be decided at the summary judgment stage . . . ." (Pls. Br. Mot. Summ. J. i.)

The Court rejects both sides' efforts to tiptoe around the problem that both have acknowledged: Moussa and Panzer's respective versions are irreconcilable. Their sworn testimony at their depositions have created a head-on conflict, which should and will require both litigants to get on the witness stand and take an oath and testify about what happened in April of 2007. Counsel invite the Court to reduce the messy consequences of an irreconcilable conflict like this to a board game, and the Court declines.

Because a great big material issue of fact looms, summary judgment in favor of Moussa on the five claims in the complaint, must be denied. As well, summary judgment in favor of

Dunkin' on Moussa's six counterclaims must be denied because of the irreconcilable versions of events the principals put forth, and because the counterclaims are solidly intertwined with the claims asserted in the complaint. As is well known to all, under Rule 56(c), summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A corollary is that a district court should not grant summary judgment by cutting the heart out of the facts and packaging what is left into a non-trial disposition in favor of one of the parties.

      The pending motions are denied. An appropriate order will be entered.

      /s/Katharine S. Hayden_____
      Katharine S. Hayden, U.S.D.J.